Thomas C. St. John and Pauline St. John v. Commissioner.
St. John v. Commissioner
Docket No. 5583-67.
United States Tax Court
T.C. Memo 1970-238; 1970 Tax Ct. Memo LEXIS 121; 29 T.C.M. (CCH) 1045; T.C.M. (RIA) 70238; August 24, 1970; Filed. Joseph M. Touhill, 301 N. Memorial Dr., St. Louis, Mo., for the petitioners. Glenn L. Strong and Leonard A. Hammes, for the respondent. SCOTT Memorandum Findings of Fact and Opinion *123 SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1964 and 1965 in the respective amounts of $889.91 and $1,575.99. Respondent by affirmative allegations in his answer claimed an increased deficiency for the year 1965 in the amount of $234 for a total deficiency for 1965 of $1,809.99. Certain of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision the following: (1) Whether petitioners are entitled to deduct for each of the years in issue any amount of automobile expense in excess of the amount allowed by respondent in his notice of deficiency. (2) Whether petitioners are entitled to deduct for each of the years in issue entertainment expense, dues with respect to entertainment facilities, and gratuities expense in excess of the amount of each claimed expenses allowed by respondent in his notice of deficiency. (3) Whether petitioners are entitled to deduct amounts expended for flowers in each of the years in issue. (4) Whether petitioners are entitled to a dependency exemption for their son, Thomas J. St. John, for the year 1965. Findings of Fact Some of the facts *124 have been stipulated and are found accordingly. Thomas C. St. John and Pauline St. John, husband and wife who resided in St. Louis, Missouri at the time of the filing of the petition in this case, filed joint Federal income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue, St. Louis, Missouri. The returns were filed on the cash receipts and disbursements basis. During the year 1965 petitioners' son, Thomas J. St. John (hereinafter referred to as Thomas J.) was 24 years old. He received a Master of Arts degree from St. Louis University in February 1965 with a major in American History and a minor in Latin American Studies. Thomas J. had been enrolled for 2 semester hours of credit at St. Louis University during the months of January and February 1965. During that same period he was employed as a substitute teacher, teaching 5 days per week in the St. Louis City School system. From February 21, 1965, through June 18, 1965, Thomas J. was employed by the School Board as a full-time teacher in the City School system. As compensation for his teaching duties during 1965, Thomas J. received $2,887.50. About the middle of August of 1965 Thomas *125 J. went to British Honduras in connection with a program sponsored by the Society for the Propagation of the Faith. During his stay in British Honduras Thomas J. taught Spanish, English, and Social Studies for which he received $10 a week plus his room and transportation. During the period January through the middle of August 1965, Thomas J. lived with petitioners in their home and was furnished room and board by petitioners. Although his principal reason for going to British Honduras was to increase his understanding of the Spanish language and customs, Thoms J. was not enrolled as a student in any academic institution in that country. The primary language spoken in the area in which Thomas J. taught was Spanish and his students spoke Spanish. Thomas C. St. John (hereinafter referred to as petitioner) is a physician practicing industrial medicine and industrial surgery. Petitioner serves a number of industrial clients, conducting for them preplacement examinations of prospective employees, regular periodic and special examinations of personnel, as well as treating injuries of employees which occur at the employer's plant. Petitioner also advises his industrial clients concerning *126 method of prevention of injuries and illnesses of employees arising out of plant conditions. Petitioner is also responsible for counseling his clients' employees about their personal health and related problems or referring them to specialists and consultants. The nature of petitioner's work 1047 requires that he keep detailed records both for the use of his clients and for the use of insurance companies. Many of petitioner's clients operate three shifts; therefore, petitioner is on call 24 hours per day for emergency treatment of injuries or illnesses of employees which occur during their working period and to see that such employees are hospitalized when necessary. Each company chooses its industrial physician and surgeon from a list approved by its insurance companies. Such lists include a number of physicians who have an industrial type practice and therefore the practice of industrial medicine is competitive. During the years here in issue petitioner maintained his main office in his home. In this office he maintained files concerning his patients, a typewriter, oxygen equipment, crutches, canes, immunization equipment, and basically those materials which, in conjunction *127 with his well equipped medical bags, would enable him to do the work normally required by his practice. He conducted physical examinations and treated emergencies in this office. In addition he began and ended his normal workday in this office. Generally, petitioner's first work each morning would be to contact by telephone the officers and agents of his clients regarding the cases of their employees he was handling and to arrange for his other work for them. Petitioner also had another office which was on Grand Avenue (hereinafter referred to as the Grand Avenue office). In this office petitioner kept his heavy equipment such as an orthorator, audiogram, hydrocollator for wet pack physiotherapy, the surgical tools necessary for his practice, and a recovery room. Petitioner treated emergencies in his Grand Avenue office as well as at his home office, and also kept a second set of files there. Several of petitioner's major clients had medical departments with extensive medical facilities which were available for petitioner's use. At least one of his clients employed a full-time registered nurse. A complete set of files relating to the employees of the respective companies was kept *128 at the local plant medical office. The nature of petitioner's practice was such that he kept no routine schedule. After making telephone calls from his home office to his industrial clients and the staff at his Grand Avenue office for the purpose of planning his day's work, generally petitioner would then call on patients. Petitioner drove his automobile on these and all other calls he made in person. Thereafter he would visit the plants of some of his clients and see patients in his office at home and at the Grand Avenue office. Petitioner, when possible, made his first calls after leaving his home office upon his patients who were at their homes and then would call on his hospital patients. At least one of petitioner's clients had a plant in East St. Louis. To call on this client it was necessary for petitioner to make a trip across the river. Petitioner called at this client's plant from three to six times per week. Such calls might be made at any time during the day or night. Petitioner spent 15 cents for bridge tolls each way for his car on these trips. The total tolls paid by petitioner on these trips was approximately $70 in each of the years 1964 and 1965. Petitioner always *129 carried two medical bags and one oxygen tank with a total weight of approximately 45 pounds in his car. During the taxable years here in issue petitioner owned a 1962 Thunderbird automobile which he drove a total of from 8,000 to 8,500 miles per year. No other members of petitioner's family drove this automobile. Except for occasionally driving the Thunderbird when he and his wife went out to dinner or for some similar personal reason, this car was used by petitioner only in connection with his practice of medicine. During each of the years here in issue petitioner's personal use of the Thunderbird was not over 10 percent of his total use of the car. During each of the years 1964 and 1965 petitioner spent approximately $360 for gasoline used in the Thunderbird, $76.50 for oil changes and lubrication, and $45.50 for having the car washed. Petitioner paid $249 for insurance on his Thunderbird in 1964 and $320 in 1965. In each of the years 1964 and 1965 petitioner paid $33.50 for state and city licenses for his Thunderbird. During 1964 petitioner paid $69.62 for snow tires and $32.88 for a battery for his Thunderbird. In 1965 petitioner spent $29.71 for a tire for his Thunderbird. *130 Petitioner spent $146.23 in 1964 and $168.11 in 1965 for repairs on his Thunderbird for which he was not compensated by insurance. The total depreciation on petitioner's Thunderbird under the method elected by petitioner was $502.62 in 1964 and $376.96 in 1965. During each of the years 1964 and 1965 petitioner paid dues of $20 to the Missouri Automobile Association for his membership therein. 1048 Petitioner owned a Chevrolet Impala automobile during the years here in issue. In 1964 he traded in one such Chevrolet on another. The Chevrolet Impala which he purchased in 1964 was an eight cylinder car. This car was used primarily by petitioner's wife. However, when petitioner's Thunderbird was in the repair shop or when petitioner thought he might need to transport more than one other person, he used the Chevrolet. During each of the years here in issue he drove the Chevrolet for 100 to 115 miles each month. Petitioner arranged parking privileges near his Grand Avenue office for either car because of the danger of theft of his medical bags and equipment which existed in the area. For that privilege petitioner paid $96.60 in 1964 and $134.55 in 1965. From time to time during *131 the years here in issue petitioner purchased from Famous-Barr items which he would give as remembrances to individuals in the employ of his various clients. At Christmastime he would arrange for a gift basket of fruits and food products to be sent to some of these individuals from David and Harry in Medford, Oregon. Two of the individuals to whom such baskets were sent were brothers of petitioner who were connected with businesses in the St. Louis area. Petitioner retained no records indicating the individuals to whom the gifts were made or the fruit and food baskets were sent at Christmas. Petitioner, from memory, was able to name some of the individuals to whom fruit and food baskets were sent but had no independent recollection of the individuals to whom gifts which came from Famous-Barr were made. From time to time when an officer or supervisory employee of one of petitioner's clients died or there was a death in the immediate family of such a person petitioner would send flowers to the funeral. Petitioner was of the opinion that this practice was helpful to him in maintaining his business contacts with his clients. Petitioner also from time to time entertained either in his *132 home, at a restaurant, or at the Missouri Athletic Club, officers or employees of his clients. When he entertained at home at informal dinners, he would include in the group of guests personal friends who had no connection with any of his clients. Petitioner maintained a membership in the Missouri Athletic Club primarily for the purpose of using the facility for entertaining. Petitioner kept no records of the individuals whom he entertained at the Missouri Athletic Club, nor did he have any independent recollection of the persons whom he entertained there on any specific occasion. Petitioner's wife kept a loose leaf notebook in which she sometimes noted the names of the business acquaintances whom she and petitioner entertained at home and an estimate of the cost of the entertainment. The aggregate cost of each meal with respect to which petitioner's wife kept such notations was in excess of $25. Petitioner was the examining physician to the local Knights of Columbus Chapter. He felt he was required to be a member of that organization for that reason and so maintained such membership. At Christmastime in 1965, petitioner gave $100 to Paula Kirle, a registered nurse in the plant *133 office of one of his clients. Paula sometimes attended by-monthly management meetings of the client as a representative of the medical department, freeing petitioner from the duty of going to such meeting. She was also at times able to relieve petitioner of a trip to a hospital by advising him of the current situation in relation to his patients. Paula was paid a regular salary by her employer, petitioner's client. During the years in issue it was petitioner's practice to keep at least two checking accounts, one with Hampton Bank of St. Louis and the other with Mercantile Commerce National Bank in St. Louis. Petitioner would designate one of these accounts as his personal account and the other as a business account, and would reverse such designation the following year. Thus, during a 2-year period each bank would have petitioner's business account one year and his personal account the next. No one but petitioner ever wrote checks on his business account but petitioner would at times pay personal expenses with checks drawn on his business account. On at least two occasions during the years here in issue petitioner drew checks on his business account for his son's college expenses *134 at St. Louis University. Petitioner on his income tax return for the calendar year 1964 deducted as automobile expenses the amount of $2,058.16, as business promotion and gratuities expense, $1,258.76, as medical publications, 1049 dues and subscription expense, $857.02, and as flower expense $198.80. Respondent in his notice of deficiency disallowed $1,208.90 of the claimed deduction for automobile expense, $740.57 of the claimed business promotion and gratuities expense, $280.10 of the claimed medical publications, dues and subscriptions expense, and the entire claimed deduction for flower expense. [1] Respondent's basic explanation in each instance for the disallowance was that petitioner had not established that the amount was an ordinary or necessary business expense or was expended for the purpose designated. *135 Petitioner on his Federal income tax return for the calendar year 1965 deducted as automobile expenses the amount of $1,974.40, as entertainment expenses the amount of $802.83, as business promotion and gratuities the amount of $1,187.18, as dues and subscription expense the amount of $927.25, and as flowers expense the amount of $187.74. Respondent in his notice of deficiency disallowed $1,150.51 of the claimed automobile expense deduction, disallowed the claimed entertainment expense deduction in full, disallowed $514.15 of the claimed business promotion and gratuities expenses, disallowed $509.18 of the claimed deduction for dues and subscriptions, and disallowed in full the claimed deduction for flowers expense. [2] Respondent's explanation for the disallowance of the claimed deduction in each instance was that petitioner had not established that the amounts represented ordinary and necessary business expenses or were expended for the purpose designated. *136 Petitioners on their income tax return for the calendar year 1965 claimed a dependency credit for their son, Thomas J. Respondent did not disallow this claimed deduction but in his answer affirmatively alleged that he erroneously failed to disallow that claimed deduction and that petitioners were not entitled to the claimed deduction of a dependency credit for Thomas J. Ultimate Findings of Fact 1. Petitioner is entitled to deduct as ordinary and necessary business automobile expense the total amounts of $1,653.57 and $1,574.82 for the years 1964 and 1965, respectively. 2. Petitioner has failed to establish, in accordance with the requirements of section 274, I.R.C. 1954, [3] and respondent's regulations issued pursuant thereto that he is entitled to deduct any amounts in excess of the amounts allowed by respondent for promotion and gratuities expenses, dues and subscriptions, flowers expense, and entertainment expense. 3. Thomas J. St. John was not petitioners' dependent during the year 1965 within the definition of section 152. Opinion The issues here are purely factual. *137 Petitioner is of course entitled to deduct the expenditures for operating his automobile to the extent that these expenses are ordinary and necessary business expenses. Petitioner contends that he used his Thunderbird only for business and therefore should be entitled to deduct all expenses in connection therewith. Many of the expenditures such as those for gasoline and oil were estimated by petitioner. Certain of the amounts claimed by petitioner as deductions for repairs were amounts for which he was compensated by insurance. From the evidence, we have determined and set forth in our findings of fact the amount of expenses incurred by petitioner in connection with driving his Thunderbird and his other automobile expenses. The expenses we have considered deductible are 90 percent of the expenses incurred by petitioner 1050 for the Thunderbird plus 90 percent of the depreciation sustained on the Thunderbird. To this we have added the dues petitioner paid for his membership in the Missouri Automobile Association to the extent we considered such dues allocable to business driving, the tolls he paid for business driving, and the parking *138 fees he incurred for parking near his Grand Avenue office. We have also added $100 as the cost of petitioner's business mileage driven in the Chevrolet. In allowing only $100 as the cost of driving the Chevrolet, we have weighed against petitioner for his imprecision in keeping proper records. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Respondent not only challenges petitioner's proof of the cost of driving his Thunderbird but also contends that only about one-half of his driving of this car was for business purposes. Since petitioner's day generally begins in his office at home, petitioner rarely has expenses of commuting. Respondent argues that in any event petitioner's first call after he leaves his home office should be considered commuting. We do not agree. When petitioner makes his first busines stop at his main office which is in his home and his last one there, his commuting is not by automobile. From the facts here, we have found that petitioner uses his Thunderbird 90 percent of the time for business and only 10 percent for his personal needs. While we accept petitioner's testimony with respect to his driving habits and use of his car, his memory *139 of expenditures was too vague to accept all of his estimates of expenses. For example, he testified to certain repair costs as being deductible expenses when the records from the repair company showed that a reimbursement was to be made by insurance. Because we are unable to accept petitioner's estimates in their entirety, we have, under the doctrine of Cohan v. Commissioner, supra, made our determination of petitioner's automobile expenses as best we can from all the evidence expenses of record. Although petitioner claimed the deduction for the $100 paid to Paula Kirle at Christmas 1965 as a gratuity, on brief he argues that he should be entitled to deduct the full $100 as a payment for services rendered instead of only the $25 amount allowed by respondent as a deduction of a business gift. Section 162 allows deductions for ordinary and necessary business expenses. Section 1.162-9, Income Tax Regs., indicates that bonuses to employees will be deductible when paid as compensation. Section 1.274-3(a), Income Tax Regs., disallows *140 deduction under sections 162 and 212 for gifts to the extent that the expense of any such gift exceeds $25. Whether petitioner's payment to Paula was for services rendered or was a gift must be determined from all the facts and circumstances surrounding the payment. While Paula was a professional associate of petitioner, she was not his employee. She was a full-time employee and received her compensation from one of petitioner's clients. The nature of the services rendered to petitioner by Paula is such that it appears unlikely that compensation was required or anticipated. In fact petitioner does not contend that Paula requested or was told she would be compensated for her services to petitioner. The situation is one of a close and valued professional associate rewarded with a special gift at Christmas. Petitioner has presented no evidence which indicates that the payment was anything but a Christmas present. Since the payment was a gift rather than compensation for services rendered, it falls within the prescription of section 1.274-3(a), Income Tax Regs., and may be deducted only to the extent of $25 in each year. *141 Section 274[4] governs petitioner's claimed entertainment expenses and business gifts. That section requires certain substantiation 1051 of expenses. Petitioner kept virtually no records relating to his expenditures for gifts to his business acquaintances. Petitioner's canceled checks to Famous-Barr were on his business account. However, this at most reflects merely petitioner's conclusion that the checks were payments for business gifts. Petitioner had no independent recollection of any specific expenditure, nor the total amount of such expenditures, nor any fact such as the date, description or business purpose of the gift, or any other fact which might be considered substantiation under section 274(a). At least on some occasions petitioner drew checks on his business account for personal expenses. However, even if we were to assume that all instances where this was intentionally done by petitioner were brought to the Court's attention, we would not conclude that it follows that the checks to Famous-Barr were for business gifts. The check for the snow tires for petitioner's car was written to Famous-Barr The most favorable inference *142 for petitioner we are justified in making from the evidence in this case is that petitioner considered the items for which the checks to Famous-Barr were drawn to be business expenses. Such a meager showing does not meet the requirements of the evidence necessary to entitle a taxpayer to a deduction for business gifts for years to which section 274 is applicable. For all this record shows all the items purchased in each year from Famous-Barr could have been given to the same person, thus violating the $25 limit set by section 274(b). *143 Petitioner also seeks to deduct the expense of sending gifts to between 30 and 40 individuals through David and Henry, a mail order house specializing in fruit and food gifts. Petitioner has kept no records of the individuals to whom the gifts were sent, nor does he have knowledge of the individual gifts beyond the total cost and the fact that they were fruit or food. Section 274(d) sets forth the requirements of substantiation for allowance of deductions claimed for expenses relating to gifts. Petitioner referred to a list made at sometime subsequent to the time when the gifts were sent to refresh his memory as to some of the recipients. Some of the individuals were attorneys; some were company officers who did not live in St. Louis. Only in the most general way were any of these persons shown to be so related to the clients which petitioner serviced during the years in issue as to possibly be considered a business connection. Two of the baskets were sent to petitioner's brothers. In listing the names of the recipients petitioner identified nine of them as being with "Mobil Oil Company." Petitioner submitted a list of over 150 different industrial clients he serviced during the *144 years in issue. He made no showing of a business reason for so concentrating his "gifts" to the officers and employees of only one client. Petitioner identified another recipient with the Knights of Columbus. However, except for a general statement that he had been "the chief medical examiner from 1930 to the present time of the Knights of Columbus," he showed no business connection for the gift. Whom he examined for the Knights of Columbus or how a gift to some member would aid in any business relationship is not shown. There is no 1052 further showing with respect to petitioner's business relationship to other recipients of the fruit and food gifts. The cost of each gift is not shown. For all this record shows, the greater part of the sums spent could have gone to one or two persons, even petitioner's brothers, and very small items to the other recipients. Certainly, at some time or for all this record shows at the time of the trial, petitioner had an order form listing the names and addresses of the recipients and the items to be sent to each. However, this was not produced at the trial. We suspect that at least some of the expenditures for fruits and food were for gifts to *145 such persons as to qualify for deduction were there sufficient substantiation. This, however, is not sufficient under section 274 to justify any deduction. William F. Sanford, 50 T.C. 823 (1968), affirmed 412 F. 2d 201 (C.A. 2, 1969). See Richard A. Sutter, 21 T.C. 170, 174 (1953), in which under Cohan v. Commissioner, supra, we allocated 25 percent of somewhat similar expenditures by an industrial physician to business expense. Section 274(a) governs the deduction claimed by petitioner for the entertainment done by him at home, at restaurants, and at the Missouri Athletic Club, unless the exception of section 274(e)[5] applies. From petitioner's testimony and the evidence, though scanty, it appears that the meals were generally not such as would be conducive to a business discussion, since there were generally a number of people present other than the claimed business contacts being entertained. While it is not impossible that business would be discussed in such a situation, it is unlikely that more than social conversation would result. Furthermore the evidence shows that some of the entertainment included shows. Therefore, *146 section 274(a) controls. Petitioner has not submitted any evidence to establish that the items of expense were directly related to his trade or business. Also, some items are included twice in the total deduction claimed and the few instances in which any names are noted of the person entertained show different names for the same date on different notations. The evidence submitted by petitioner is totally inadequate to meet the requirements of substantiation of section 274(d). Since petitioner has not shown whom he entertained at the Missouri Athletic Club or the *147 business relationship of such entertainment, he has failed to meet the requirement of section 274 for a deduction of the dues he paid to that club. Also, he has failed to show a sufficient business reason for membership in the Knights of Columbus to establish his claimed deduction for dues to that organization. Petitioner explained one $50 check drawn to "cash" as being for stamps. However, this record shows that separate from any items in issue petitioner claimed over $850 in one year and over $900 in another for stationery and postage, which claimed deductions were not disallowed by respondent. We conclude therefore that if the $50 check were for postage, the deduction has been allowed to petitioner. Petitioner claims that his expenditures for flowers of $198.80 in 1964 and $187.74 in 1965 were ordinary and necessary business expenses. Petitioner testified that the flowers were sent to funerals of officers or employees of his clients or to funerals of members of the families of such officers or employees. Because of his lack of records, petitioner's testimony was most general as to the business purposes for sending the flowers. He was unable to give any indication of the individuals *148 to whom or for whom the flowers were sent or any specific business connection with such persons. He considered the flowers to be for business purposes because the check to the florist was written on his business account. In the light of the other evidence in this record we do not consider petitioner's conclusion in this respect valid. Petitioner testified that generally the card enclosed would include his wife's name as well as his. Also, the inference from the record is that the claimed deduction included petitioner's total florist bills, indicating petitioner's attitude with respect to all his expenditures that all his time, social contacts, entertainment, gifts, and expressions of sympathy were for "business." The record is insufficient to support petitioner's contention in this respect. 1053 In light of the ambiguous nature of petitioner's business accounts, we hold that petitioner has not established that he is entitled to any part of the claimed deduction for flower expenses in either year here in issue. See Jose V. Ferrer, 50 T.C. 177, 185 (1968), affirmed per curiam 409 F. 2d 1359 (C.A. 2, 1969). Petitioner on his 1965 income tax return claimed *149 a dependency exemption under section 151(e) for his son, Thomas J. St. John. A dependent is defined by section 152 as being, among others, a son of a taxpayer over half of whose support for the calendar year was received from the taxpayer. Section 151(e) allows an exemption of $600 for each dependent who has a gross income for the calendar year of less than $600, or who is a taxpayer's child and has not reached the age of 19 or who remains a student. Section 1.151-3(b), Income Tax Regs., defines a student as "an individual who during each of 5 calendar months during the calendar year in which the taxable year of the taxpayer begins is a fulltime student at an educational institution or is pursuing a full-time course of institutional on-farm training under the supervision of an accredited agent of an educational institution or of a State or political subdivision of a State." Thomas J. St. John was at least 24 years old at the beginning of petitioner's taxable year 1965, and during that year earned considerably more than the $599.99 maximum allowed by the statute. He *150 was enrolled as a student, full or part-time, at St. Louis University only during January and February of the calendar year in which petitioner's taxable year 1965 began. Petitioner argues that during the time Thomas J. spent teaching in British Honduras he was a full-time student. We do not agree with petitioner's contention. Although the major purpose of Thomas J. in going to British Honduras was to further his knowledge of the Spanish language, the language of the statute clearly indicates the need for existence of a formal educational relationship as pupil-teacher between the student and the institution in order to give rise to the exemption. Petitioner's argument that because Thomas J. was teaching at an "educational institution" and at the same time learning better to speak Spanish from his association with his pupils he was a "full-time student at an educational institution," strains the language as well as the clear intent of the statute. We hold that petitioner is not entitled to a deduction for a dependency credit exemption for Thomas J. for the calendar year 1965. Decision will be entered under Rule 50. Footnotes
1. The parties stipulated with respect to the claimed deduction in 1964 for business promotion and gratuities that the following were the items which were disallowed by respondent: St. Louis University, $575, which amount petitioner conceded to be nondeductible; Missouri Athletic Club, $15; Stix, Baer & Fuller, $7.72; Cash, $50; and eight items purchased from Famous-Barr for $92.85. These items total the $740.57 disallowed by respondent.↩
2. The parties stipulated that included in the claimed deduction of $1,187.18 for business promotion and gratuities were the following disbursements made by petitioner which were disallowed by respondent: A payment to St. Louis University of $60.56 which petitioner now concedes to be nondeductible, a payment of $120.70 to Mavrakos Candy Company which petitioner now concedes not to be deductible since the amount was included twice in petitioner's claimed deductions, a payment of $100 to Paula Kirle which respondent allowed as a business gift only to the extent of $25, a payment of $27.50 to Famous-Barr, and an unidentified item of $230.39, making the total of $514.15 disallowed by respondent. The parties further stipulated that for the year 1965 included in the claimed deduction of $927.25 for dues and subscriptions was an amount of $17.80 paid to the Knights of Columbus, two items totaling $68.71 paid to American Express and eleven items totaling $422.67 paid to the Missouri Athletic Club.↩
3. All references are to the Internal Revenue Code of 1954.↩
4. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES (a) Entertainment, Amusement, or Recreation. - (1) In general. - No deduction otherwise allowable under this chapter shall be allowed for any item - (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) Facility. - With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. (2) Special rules. - For purposes of applying paragraph (1) - (A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities. (B) An activity described in section 212 shall be treated as a trade or business. (b) Gifts. - (1) Limitation. - No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25. For purposes of this section, the term "gift" means any item excludable from gross income of the recipient under section 102 which is not excludable from his gross income under any other provision of this chapter but such term does not include - * * * (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home) (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item and, (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
5. Sec. 274(e) Specific Exceptions to Application of Subsection (a). - Subsection (a) shall not apply to - (1) Business meals. - Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.↩